Case No. 24-3292 Kirstyn Bashaw v. Majestic Care of Whitehall, LLC Argument not to exceed 15 minutes per side Ms. Dyer, you may proceed with the appellant I'd like to reserve three minutes for rebuttal Very well May it please the court Good morning My name is Carrie Dyer and I represent the appellant Kirstyn Paige Bashaw In this case, Ms. Bashaw's former employer, Majestic Care of Whitehall, LLC retaliated against her after she engaged in protected activities That included complaining about resident abuse and or neglect as well as complaining about her supervisor's sexually harassing and racially insensitive behavior Ms. Bashaw respectfully requests that this court reverse the district court's grant of summary judgment in Majestic Care's favor on all of her retaliation claims Reviewing de novo, this court can conclude first that Ms. Bashaw can establish a prima facie case of retaliation And second, with respect to each of the four reasons that Majestic Care manufactured for her termination determine that Ms. Bashaw can raise a genuine issue as to pretext Can I ask you specifically about the potential HIPAA violations? So that's the one that I guess seems the most problematic Anyone can pick what's the most problematic But you understand what I'm saying We've got case law There's a couple cases that we found One's called Crosley Another is it's Crosley v. Kettering Adventist Health Care It was a discrimination case And Allen v. Highlands Hospital, a discrimination case And we found that an employer who finds that an employee engages in a potential violation of a HIPAA, they can fire them That's an adequate and independent reason Why doesn't that doom your case? Sure, Your Honor In this case, there was no HIPAA violation There was a meeting There were two meetings Can I ask you because just about that first point There's no HIPAA violation Your client, I think it's conceded as I read the briefs and recorded conversations in which patients were discussed And why is that any different than taking a medical record or anything that indicates a patient who has health issues? I mean, those other cases are similar in that they didn't take the records and publicize them They just took them So there's a, I'm not saying actual HIPAA, potential HIPAA violation Sure, Your Honor And I don't necessarily disagree that there would be a potential HIPAA violation There is not a HIPAA violation in this case There hasn't been an allegation that there's a HIPAA violation in this case The recorded meetings, in our view, are no different than if Ms. Bashaw had been sitting in the meetings taking notes in her personal notebook related to the patient care issues that came up which she did in which Majestic Care was aware of and had no issue with There's no allegation Recordings are just different in character I think everybody feels that way I mean, recordings without notice to the individuals being recorded I think everybody has a sense that there's some sort of breach of trust, really, about the conversation I didn't know that my every word here was being recorded and somebody could use it as she chooses to That makes a lot of people uncomfortable Sure, Your Honor And I can understand that especially in the event that an employer had a policy that prohibited recording But not only if somebody had a policy And I understand your point And that's a valid point in your favor But I don't think one needs a policy to feel that that is inappropriate And, Your Honor, the District Court did cite two cases I believe one of them, Your Honor, you mentioned And I think both of those cases are distinguishable The first was the Quintanilla V.A.K. 2 And the District Court cited this for the proposition that simply because a policy is unwritten doesn't mean it's an unreasonable standard to hold an employee to But in conducting the pretext analysis the court there emphasized that the employee terminated or, I'm sorry, the employee was terminated for violating a known policy That policy was uniformly enforced All employees were aware of the policy But everyone knows, right, that works at a healthcare facility that you can't engage in HIPAA violations, right? You would agree if she actually engaged in a HIPAA violation it would be a justification to fire her That's correct, Your Honor And I think that I'm sorry, I didn't mean to No, you didn't, but I appreciate it But the potential HIPAA violation, why isn't that sufficient if our case law says it is? The Allen v. Highlands Hospital Court case speaks to this And in that case, again, I believe is distinguishable And the reason is the District Court relied on this in the lower court in this case And in Allen, the plaintiff was an employee at the hospital And I believe this is what you were speaking to She was aware that her actions would have violated HIPAA And what she did was take an additional step that Ms. Bashaw did not take There's no allegation that she took That this plaintiff in Allen continued her efforts knowing it would have violated the company policy and HIPAA to retrieve a patient's medical records without proper authorization forge the patient's signature and then release the patient's medical records And based on those facts, the Allen court said this warrants termination I have a legal question for you So you say in your brief that So the employer here offers for non I mean, what they claim are non-protectual reasons for firing And your brief sets out the legal proposition that if something like a substantial majority or a substantial number, I guess, of those have to be non-protectual Why isn't it just that they need one non-protectual reason? And so and where does the substantial number idea come from? I didn't see that in our case While you seem to rely on a district court opinion from Ohio that relies on a third circuit opinion So why do you think that's the controlling law? Is there a Sixth Circuit precedent agreeing with you? And why does it make sense if we don't have controlling law? Sure, Your Honor To answer your question first directly I don't think there is a Sixth Circuit case on point that specifically speaks to that I did cite a Southern District case Nathan v. Ohio State University that does cite a Sixth Circuit case that doesn't directly speak to that but instead goes speaks to the general principle here Where an employer, as in this case, proffers multiple legitimate non-discriminatory reasons the proper analysis is whether Ms. Bashaw can cast substantial doubt on a fair number of them It is not up to her to disprove every single reason and instead it should be an overall Why is that? If they had only offered one and it were non-protectual that'd be good enough So if they offer two I don't know how you do a substantial number when the number's two But why isn't one good enough? It would be good enough if it's the only one they proffered Your Honor, I think that Nathan v. Ohio State Court answers that question The court explains that a plaintiff doesn't need to discredit every reason because the fact finder's rejection of some of the defendant's proffered reasons may impede the credibility of the employer enough that the fact finder can decide that none of the reasons are genuine How do you deal with... I'm sorry The key word there might be may The inference you talk about can make sense that it's sort of like the employer might be impeached generally on that particular record and say it's one individual supervisor who's making just factual allegations whose only basis is his testimony and three of the things are just easily refuted It makes one doubt the fourth But there might be other cases where you can sort of take shots at two or three of them but there's one that's pretty much based on... that has a very solid basis And in that case, this rule would be... well, you know, may not in that instance So I mean, would you agree with that? It's not sort of a categorical thing Yes, Your Honor, I do agree with that I think in this case, we fall into the former situation where the majority of the reasons in support of termination are based on the discriminatory supervisor, Mr. Beatrice I mean, he's the one who had issues with Ms. Beshaw's attendance Yet he decided to issue her a first corrective action when he could have chosen among all the progressive discipline until he found out about her protected activity Then he decided that her attendance issues warranted termination He's also... I'm sorry, Your Honor No, thank you, I didn't Can... Did you look at Smith v. Chrysler Corp? The Sixth Circuit case? I thought you... Yes, Your Honor, I do believe we cited that in the brief Yeah, that's what I thought So how do you deal with this sentence? In challenging an employer's action, the employee must demonstrate that the employer's reasons each of them in italics if the reasons independently caused the employer to take the action it did are not true I think the Sixth Circuit case Jones v. St. Jude Medical Center is... It provides the groundwork to find the exception to that rule So Jones v. St. Jude Medical Center is a 2012 Sixth Circuit case that discusses when an employer has more than one independent, legitimate, non-discriminatory... Isn't that unpublished or am I wrong? But you can still use it I'm just persuasive, but I just want to... Yes, Your Honor, I don't know standing here Oh, okay, go ahead I'm sorry to interrupt you Neither do I, so... Okay, that case explained that generally speaking even if an employer offers a couple different reasons even if some of them are protectual and one is a good reason that is enough for a court to grant summary judgment but the Jones court also said that there is an exception to this rule and the court explained we wish to point out that an employer's strategy of simply tossing out a number of reasons to support an employment action hoping that one sticks can backfire and in cases where the reasons are intertwined especially coming from a single supervisor the plaintiff can raise suspicion sufficiently that a jury or a fact finder might decide that none of the reasons are credible and that the reasoning itself is a pretext for discrimination So would you agree though even on your substantial number if that's the right framework that three out of four would be substantial? So in other words, if we thought... I mean, the district court said well, there's a genuine issue of material fact with respect to the thing about the phone call and not readmitting patient B but found that the other three were sufficient I know you disagree with that but if we agreed with that three out of four has to meet the test of substantial even if that's the test Potentially, I don't think so in this case because I think that reason that the district court relied on as the pretext issue so the resident B issue that was the main driver here I think that that is the primary reason that created the investigation that HR looked into Ms. Bashaw's conduct that then triggered her termination And so if this court finds and agrees with the district court that the resident B safe resident discharge policy is a pretext for discrimination even if there might be some legitimacy of the other three reasons this court can still decide that the termination was a pretext for discrimination because the main reason that really triggered this termination was the resident B issue Okay Your honors, I see my time has concluded Thank you  Good morning, your honors and may it please the court My name is Joe Brennan and I'm legal counsel for Majestic Care of Whitehall LLC This case hinges on the issue of pretext and the legitimacy of the four reasons that Ms. Bashaw was terminated Those four reasons are A, Ms. Bashaw made it clear she did not want to return to work Two, she surreptitiously recorded work conversations with co-workers and managers Three, she violated policy on safe discharge of patients and her refusal to readmit resident B And four, her excessive tardies and missed work We're gonna ask you about the tardies because it seems to me you weren't gonna fire her until she complained So reason three, the resident readmission the district court found a genuine issue of fact Reason four, it seems like why can that provide a basis when you were just gonna discipline her and not fire her before it looked like she filed her complaints Thank you, your honor Of the four reasons three out of the four are independent reasons I think it's fair to classify the tardies and absences as an additional factor that weighed in favor of her termination I can tell you that if it was the only reason she was going to be disciplined she would not have been terminated I think the record evidence shows that for the tardies and absences only If there were no other issues such as the readmission issue the issue having to do with the recordings You concede that's not an adequate and independent reason That in and of itself would not be But it combined with the other three reasons each one of those by themselves is adequate reason a legitimate non-discriminatory Why isn't the district court right that reason three there's a material issue of fact On its face, your honor It can serve The jurisprudence in the circuit will say that excessive tardies and absences can serve as a legitimate non-discriminatory reason What I'm telling you in the facts of this case given that Mr. Beatrice had written her up a warning based on those absences She would not have been terminated if that was the only reason But what happened was after she refused to admit resident B she was called into that meeting or it was a phone call with Ms. Niset and she discovered the other independent reasons So collectively it was included in the four non-discriminatory reasons because it was a factor Although to your honor's point as a position of itself it would not be legitimate in this case I would like to talk about the issue with resident B and the discharge In that instance the district court found that there was evidence of pretext under the Katz-Paul theory of liability But the problem with the analysis and the analysis of appellant is that they started that at the top But that's not a top-down analysis It's a bottom-up analysis And what this court said in Marshall v. The Rawlings Co. is that the McDonnell-Douglas framework is integrated into the Katz-Paul theory of liability You know, I have to confess the Katz-Paul thing that metaphor has only confused me And I actually had an opinion once where I explained it but it was too long ago and I'm too tired this morning to remember what I said So can you just, can you tell us again like not using the words Katz-Paul? Yes Because it's just, it's a metaphor that does nothing It's not your fault But just what does that mean again? It means that an underlying supervisor in the theory here by appellant is it's Mr. Beatrice hold discriminatory animus Well, here it'd be retaliatory animus And he fed that information to an uninformed decision-maker And here that's Ms. Beatrice So he's manipulating It's manipulating maybe a strong word, Your Honor But what it really is is a way to undercut the honest belief rule Our ultimate decision-maker relied wholeheartedly on the advice or recommendation of Mr. Beatrice to terminate if his motivation was not legitimate and was discriminatory We can't rely upon that just because Ms. Beatrice did not know Okay, thank you Excuse me, Ms. Nista did not know All right, class is over So now you can give us your argument Well, so thank you for that because ultimately what has to be shown is that in this case Mr. Beatrice was biased And the only way you can do that is by conducting the McDonnell-Douglas burden-shifting framework The district court never engaged in that analysis and respectfully to appellant she has not made that argument either Instead, both said Well, Ms. Bashaw said she didn't do that She didn't refuse admission And Mr. Beatrice said she did And based on that he said-she said dichotomy they jumped right up to the cat's paw analysis at the top saying that did Ms. Nista rely on the bias of Mr. Beatrice But that bias was never shown As to the readmission, I guess, of patient B it seems like the material fact is that Mount Carmel at least had the impression that this person could not come back to this-to Majestic So, I mean, to what extent is- do the particular words of the conversation matter in your view? They do not Ultimately, Mr. Beatrice if we go through the analysis reached a decision based on his honest belief based on the particular facts known to him at that time that Ms. Bashaw was doing her best to refuse the readmission of resident B At the time, at the conversation he had with Ms. Stein Kathleen Stein, who was the administrator of Mount Carmel She told him that Ms. Bashaw was refusing to allow the readmission of resident B He knew of that fact at the time And he relayed that to his superiors in email communications that Kathleen Stein was aware that someone was refusing a mission of resident B And based on that information and his belief, honest belief and we'd submit the true belief that Ms. Bashaw was the one or the culprit in refusing readmission And it was based on that honest belief not animus, not bias that he recommended for this reason that Ms. Bashaw be terminated to Ms. Niset who relied on that reasonably although respectfully did do an investigation on her own and ultimately deciding to terminate Appellant Does the record support, in your view kind of a ranking of the importance of these reasons? Your Honor, yes I think as we discussed earlier the termination or the tardies and absence issue is the weakest one as it's supplemental Of the three, I think independently they all stand on their own two feet Resident B was a significant one I would say that was the top one because of the patient dumping issues we cite in the brief It's violation of federal and state law and if found guilty of it you can lose your Medicare funding And that's the lifeblood of any institution like ours It's a death knell if that were to happen Number two, although just very much a little below number one is the potential HIPAA violations from the surreptitious recording of her co-workers and her managers at stand-up meetings What about the fact that, I mean your friend on the other side raises that you don't have a policy that bans recordings We don't have a policy that bans recordings and what I'd submit is there's no case law in this circuit or elsewhere that we found that requires a policy to exist in order for you to legitimately and non-discriminatory terminate an individual for engaging in certain offending conduct And to be clear Majesticare did not terminate Appellant because she violated a written or non-written policy concerning secret recording She was fired for secretly recording So the policy is an immaterial issue Ultimately the question is is a subjective basis for her termination based on discrimination or not And here as the cases your honor cited earlier when you have an issue of potential HIPAA violation arising from a recording it's a legitimate non-discriminatory reason for discharge Those cases, like one of them involved x-rays The other one, I can't remember but I thought it also involved patient records Why aren't they distinguishable from a recording? Well, they're distinguishable only in the fact that they weren't dealing with recording But at the end of the day they dealt with the procurement of confidential patient information under manipulative means under secretive means And that way they are consistent If you look at other court decisions in this circuit in the Western District of Michigan we have Cuts v. McDonald's Court There the court said clearly a secret recording is a HIPAA issue And in and of itself of course can stand for as a legitimate non-discriminatory reason for discharge Was it in fact discussed as such? Does the record suggest that that Beatrice or whoever was talking in terms of this could be a HIPAA violation as opposed to I feel violated kind of? To answer that question, your honor I think the primary focus was the loss of trust or trustworthiness they had in Ms. Bashaw HIPAA was a concern at the forefront of their minds but it would be dishonest to say that the HIPAA was the primary reason they took action on this It was the fact that now they can't trust her not to do something in the future that would be a HIPAA violation or another evasion of somebody's privacy So while it was related the primary issue was a complete loss of trust of this employee But you could fire I mean, you don't have to have a policy against if your boss calls you into the office and says, hey, I want to discuss a management issue or a new direction we might want to take the company and there's just kind of an understanding that that conversation won't be repeated You don't have to have a policy, right? And then the employee goes out and says, hey, the boss wants to take the company in a new direction You're correct, your honor And I have to be a breach of trust like an understanding that you shouldn't have revealed that There are standards in a workplace unwritten standards that their employees should be expected to follow Throughout life Throughout life, your honors And to suggest that the lack of a specific policy is evidence of pretext in this case undercutting the legitimacy of that reason for termination just doesn't hold water Can I ask you about, I know, I mean I don't know what your answer is but it seems like she had legitimate concerns about the treatment of patients I mean, one involved an amputation of a leg that she had previously complained about Yes, your honor In that instance, you're referring to resident A Um, respectfully, we would disagree as to the authenticity or good faith of her allegations in this case At the end of the day, resident A did have an issue that ultimately required that surgical intervention But Ms. Bashaw's involvement or observation of it would not and did not impact the outcome of that If you look at the record evidence and the discussions in the briefing I thought she said she didn't I'm sorry to interrupt you I thought she said she didn't call or the person didn't call the surgical nurse or whoever it was, a specialized nurse to look at the oozing out of the bandage that ultimately resulted in the amputation Am I wrong about that? You were not wrong That was her position as she testified in her deposition But another important note to remember about that with regard to resident A is there's no evidence she actually made that complaint to any supervisor or manager at Whitehall LLC There's evidence from the supervisor and I apologize, your honor I cannot remember her name saying I never received a complaint from her If you look at deposition transcripts of her co-workers they testified they have no recollection of any allegation of resident A So she didn't complain to a decision maker about resident A and therefore it can't be retaliation Exactly, your honor That's your position That goes to the issue of the prima facie case As to resident B that one is devoid of any good faith That was done solely to undercut the authority of her supervisor, Mr. Beatrice at which that point she had garnered a lot of animosity towards So the complaint in and of itself had no validity in addition to the fact it was a decision or something she had no authority to object to But again, it was more theater for the sake of confronting her supervisor which she did on March 2nd when she surreptitiously reported him than it was about the best case or the best outcome for that patient Your honor, the last thing I'd like to talk about is the position of appellant that she articulated to Ms. Nesit in their final meeting on March 3rd over the telephone that she did not want to return to work If you look at the briefing of appellant the ultimate argument against the legitimacy of these reasons are No, I didn't or I didn't say that And that's the argument she makes here Appellant points to a transcript of a secretly recorded conversation where the words I don't want to return to work do not appear And that's true They do not appear But other words appear that suggest that she did not want to return to the job such as I don't want a working environment like this In addition to that after these conversations Ms. Armstrong, do you have to like let's assume that's the only one Do you have to order her back to work and she not refused before you can terminate her or are we just going to accept that she said it even though there's a factual dispute about it Your Honor, if an employee says they don't want to return to work if the basis for not bringing them back is not discriminatory But what if Okay, so let's assume there's a phone conversation One side says she said she didn't want to return to work and the other side says the plaintiff says Yes, I did I never said that Is that within the whatever it's the business judgment rule Yes, Your Honor, I would say that and ultimately for a court then to second guess the decision of the employer would ultimately make the court of super personnel department of the legitimacy or the good thinking or good judgment of that decision But instead it's only What's the harm with requiring that the company order her back and she not show up That she secretly record her co-workers or commit a motion violation No, I get the other ones I'm saying this is if this is the only one We don't want to employ employees who don't want to be here This is a heavy job And don't I thought that there were Neistat who did the firing also had notes from Kuhn that said or Bashaw told Kuhn Hey, I'm actively interviewing for other jobs You should get out of here too before this Yes, Your Honor And then the decision maker in addition to having had this conversation with her also had those notes That is correct Chandler Kuhn was a local HR representative It was the individual that Appellant went to to make certain complaints And in that conversation told her Hey, you should try to get out of here And again, Your Honor I'm paraphrasing I'm interviewing for other jobs In fact, I'm on my third interview this week And that was the additional information in front of Ms. Neistat when she determined that Appellant did not want her job back If I'm remembering correctly there were four Four Four employees that weren't going to come back Or is that wrong? That was in that conversation that she said we're also looking for jobs Yeah I don't remember putting a specific And Your Honors I see my time is up I want to thank you Very well, Mr. Brennan Thank you for your argument Ms. Dyer Thank you, Your Honors Your Honor, to address the last question and comments you made with respect to the reason that Ms. Bichaud did not return to work This is not a situation where we have a dispute of fact over what was said We have the transcript of the phone call where Ms. Neistat testified She left the conversation with the impression that Ms. Bichaud didn't want to return to work We don't believe that that's a reasonable interpretation of anything Ms. Bichaud said And the district court I think acknowledged that by looking at the language used in the transcript and said you know, with the benefit of the transcript we now know that Ms. Bichaud did not say that And so nothing in the conversation Ms. Neistat had with Ms. Bichaud would give her a good faith belief What about Kuhn? Because Kuhn did say I thought Kuhn said that she informed me she and three others were leaving That's where I got the four Yes, Your Honor But the fact is during Ms. Neistat's deposition I specifically asked her about why she thinks Ms. Bichaud didn't want to return She didn't reference any of that She explained that she got the impression from the phone call with Ms. Bichaud And so there's no evidence The district court unilaterally decided that could have been a reason Ms. Neistat made the decision But that's not what Ms. Neistat testified to And there's no evidence in the record that she relied on that when she made that decision With respect to the recordings this is not a situation I'm sorry Sorry to interrupt you Can you answer the business judgment portion of that they say we can't second guess like if that's what Neistat says I don't think the business judgment rule is applicable here I think the honest belief rule is what the district court looked at You know, did Ms. Neistat honestly believe Ms. Bichaud did not want to return to work And she made a decision based on the honest belief I think the honest belief rule is applicable But I think the district court misapplied it She's the only one She's the only party to the conversation She directly engaged with Ms. Bichaud And nothing Ms. Bichaud said gave her an honest reasonable belief that Ms. Bichaud didn't want to return to work With respect to the recording issue Your Honor also compared this to a situation where an employee meets with their boss and you're discussing confidential information then you take and disperse I don't think that is a comparable situation This was a manager's meeting This is not a situation where this is a confidential business decision that can't be relayed elsewhere This is a meeting where there are multiple people coming in and out All the managers are in attendance This is the issue here for Majestic Care is feeling threatened by what Ms. Bichaud is raising They aren't worried about HIPAA primarily They're worried about Ms. Bichaud raising concerns about patient care And Mr. Beatrice says this to Ms. Nysad He explains that she's raising these issues She's creating concern And that is in the record And finally with respect to the resident B issue No one at Mount Carmel testified here in this case at all There's no evidence from Mount Carmel Everything's coming from the discriminating supervisor And I see, your honors, my time is up Okay, thank you for your argument Very helpful arguments from both sides Case to be submitted The clerk may call the next case